UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------- x
TICOR TITLE INSURANCE CO.,

        Plaintiff,       No. 08 Civ. 1336 (LBS)

-v-

                        AMENDED
                        COMPLAINT

EMPIRE LOGGING AND TIMBER, LLC, and
ROBERT E. BASCHMANN, JR.,

        Defendants.
------------------------------------------------------------- x

[Stamp: MAR 12 2008 U.S.D.C. S.D.N.Y. CASHIERS]

        Plaintiff Ticor Title Insurance Co. ("Ticor Title"), by its attorneys Dewey & LeBoeuf LLP, files this Complaint against Empire Logging and Timber LLC ("Empire Logging") and its principal, Robert E. Baschmann, Jr. ("Baschmann" together with Empire Logging, "Defendants"), whose wrongful acts have caused and continue to cause substantial and irreparable harm to Ticor Title.

        1.        Defendants are engaged in an illegal advance fee scheme, whereby they offer to secure home, business and personal loans at a below market interest rate in exchange for a significant up-front fee. Despite a promise that a loan has been approved or secured, the borrower never receives the money.

        2.        To make their presentation seem legitimate, Defendants have been using Ticor Title's name in their promotional materials and have encouraged their victims to set up escrow accounts with Ticor Title using the up-front fee. The funds from those escrow accounts are then

-2-

forwarded to a personal account in Baschmann's name at the Bank of China branch office in New York City.

3.  In recent weeks, Ticor Title has been receiving numerous inquiries from potential borrowers regarding its relationship with Empire Logging, some concerned that the lending proposal is a fraud.

4.  In addition, Defendants have indicated that they are seeking to move funds from the Bank of China account out of the country as part of a purported real estate transaction in Panama.

5.  Defendants' ongoing illegal acts threaten to inflict a continuing harm on Ticor Title, its customers and the potential borrowers caught up in the scheme.

## PARTIES

6.  Plaintiff Ticor Title is a California corporation with its principal place of business in Jacksonville, Florida. The bulk of Defendants' illegal activity has been perpetrated upon Ticor Title's Washington State subsidiary.

7.  Defendant Empire Logging is a Wyoming corporation, which purports to have a business address in Boston, New York.

8.  Upon information and belief, Defendant Baschmann is a resident of New York State.

## JURISDICTION AND VENUE

9.  Jurisdiction is proper pursuant to 28 U.S.C. § 1331 and pursuant to the Lanham Act, 15 U.S.C. § 1125(a), and the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1962(b), (c), (d) and 18 U.S.C. § 1964(c). Jurisdiction is also proper pursuant to 28 U.S.C. § 1332.

10. Venue is proper pursuant to 28 U.S.C. § 1391.

## FACTUAL ALLEGATIONS

11. Plaintiff Ticor Title is one of the nation's leading providers of escrow and other services for real estate transactions.

12. Central to Ticor Title's business is its longstanding reputation for reliability and security, along with well known financial strength. Ticor Title, together with its affiliates, holds some of the largest reserves in the industry.

13. Defendants have misappropriated Ticor Title's name and reputation to advance their illegal advance fee scheme.

14. Defendants have executed this scheme across the country, using email, making interstate telephone calls, wire transfers and documents sent through the U.S. mail.

15. On or about June 12, 2007, Empire Logging was incorporated in Wyoming.

16. Thereafter, Defendants began using Empire Logging to advance a fraudulent scheme, whereby they offered individuals access to "humanitarian loans" that purported to allow a borrower to obtain virtually any amount of money through a 4 percent loan with a thirty-year term.

17.  Defendants tell customers that they are "not a bank or mortgage company" but claim to be a "private company using private funds dedicated to helping as many people as possible achieve their goal of living the quality of life they want and deserve."

18.  In written and oral presentations, Defendants falsely offered to "provide traditional thirty year fixed loans at an unprecedented 4% interest rate for both residential and commercial properties."

19.  In order to obtain these below market loans, borrowers are told they will only need to provide a credit report and "proof of satisfactory income."

20.  Following a meeting or telephone inquiry, Defendants send a "loan application" to potential borrowers by email or U.S. Mail, with instructions to fax the application back to a numbers in either Scottsdale, Arizona or Albany, New York.

21.  Defendants then claim that the "loan approval process typically takes 7-10 days."

22.  Thereafter, Defendants state that upon approval, each borrower will be sent a "pre-approval letter outlining the amount and terms of your loan."

23.  Potential borrowers are also told that they will have to "provide a deposit equal to 1 % of your loan amount." So, for example, to borrow $500,000 an individual will have to deposit $5,000 following pre-approval.

24.  Borrowers are then told that it will take 65-70 days for their transactions to close.

25.  Defendants instruct their customers that the deposit "must be in the form of a cashier's check payable to Ticor Title Company," and that Ticor Title will "deposit the funds into your escrow account [and] then forward those funds to Empire Logging."

-5-

26. Defendants tell borrowers that "all loan documents will be sent U.S. Mail by Ticor" including "fund receipt, escrow number and schedules."

27. Upon information and belief, in oral presentations, Defendants use Ticor Title's name and business reputation as evidence that they are offering a legitimate service.

28. Potential borrowers are told that upon closing of the loan, "your deposit will be applied to your prepaid interest," meaning that the deposit will act as a "reserve designed to cover the interest portion of your payment for the first fourteen months." Defendants claim that this will "dramatically reduce the overall interest rate on your 30 year loan."

29. Virtually none of the statements made by Defendants are true.

30. Empire Logging is not a private lending company. For example, while using the services of a Ticor Title office in Washington State, Defendants acknowledged they were not a licensed lender in Washington.

31. Nor for that matter, did Empire Logging have access to "humanitarian loans." Upon information and belief, during their sales pitch, Defendants told customers that they were affiliated with retired U.S. Air Force Colonel, William E. Beckner, and an entity called the "World Alliance of Mayors and Local Officials," which claims on its website to be a "non-profit and non-partisan business entity" that works "in harmony with the UN and the World Bank."

32. Neither Mr. Beckner nor the "World Alliance of Mayors" are authorized lenders. Upon information and belief, the "World Alliance of Mayors" is merely a shell with a website designed to advance Defendants' fraudulent scheme.

33. Nor, upon information and belief, are borrowers' deposits being used as a "prepaid interest reserve." Rather, funds previously being held in escrow are being forwarded to

a private account with the Bank of China, New York, located at 410 Madison Avenue, New York, New York.

34. Defendants are in no way "affiliated" with Ticor Title.

35. Since mid-December 2007, more than 150 Empire Logging clients have opened escrow accounts with Ticor Title.

36. Ticor Title provided services related to the more than 150 escrow accounts opened by Empire Logging clients in reliance on Defendant Baschmann's representations that Defendants would process and fund the loans to their clients, and that Ticor Title would receive fees for its services when the loans were processed and funded. Baschmann made these representations to Ticor Title representatives in Washington State in late November 2007, and on numerous subsequent occasions to Ticor Title representatives via telephone.

37. Contrary to their representations, with one exception, Defendants cannot and have not made the loans proposed in their materials.

38. None of the remaining loans applied for will ever be funded. The entire transaction is designed to fraudulently obtain application fees from potential borrowers.

39. In fact, Defendants have asked an affiliate of Ticor Title to insure a real estate transaction in Panama which would entail sending more than $1 million to that country in the coming days as part of a total financing package of more than $20 million.

40. Given a number of irregularities, including the fact that the $20 million dollar financing was $5 million above the purchase price, the fact that the purchase price was half the stated value of the property, and imprecision's in the translation of the sales contract, Ticor Title's affiliate declined to insure the transaction.

41. Nevertheless, Empire Logging is continuing to work on securing sufficient documentation to complete the transaction in Panama. Upon information and belief, the transfer from the Bank of China to Panama could occur at any time.

## COUNT I

## LANHAM ACT - UNFAIR COMPETITION THROUGH FALSE DESIGNATION

42. Plaintiff reasserts and realleges each allegation above as if fully set forth herein.

43. In or around 1982, Plaintiff adopted the mark "Ticor Title Insurance Co." and has used it in interstate commerce for the provision of escrow and other services for real estate transactions ever since.

44. Plaintiff has used the above-described mark to identify its services and to distinguish them from the services of others, by, among other things, prominently displaying the mark on store fronts, letterheads, bills, direct mail advertising, telephone directory advertising, in periodicals distributed throughout the United States, and on its website.

45. Defendants have infringed Plaintiff's mark in interstate commerce by various acts, including (i) claiming in oral sales presentations that they are affiliated with Plaintiff, and (ii) instructing borrowers that "all loan documents will be sent U.S. Mail by Ticor" including "fund receipt, escrow number and schedules."

46. Defendants' use of "Ticor Title Insurance Company" is without permission or authority of Plaintiff and is likely to cause confusion, to cause mistake, and to deceive.

47. Defendants' use of "Ticor Title Insurance Company" is a false description and representation that it is approved by, sponsored by, or affiliated with Plaintiff.

48. Defendants' acts are in violation of 15 U.S.C. § 1125(a), in that Defendants have used in connection with services a false designation of origin and a false description or representation, including words and other symbols tending falsely to describe or represent the same, and have caused such services to enter into interstate commerce.

49. Plaintiff believes that it is likely to be damaged by such false description and representation by reason of the likelihood that customers will be confused as to the true source, sponsorship or affiliation of Defendants' services.

50. By reason of Defendants' acts, Plaintiff has suffered, and will continue to suffer, damage to its business, reputation, and good will.

## COUNT II
## NEW YORK STATE LAW
## UNFAIR COMPETITION

51. Plaintiff reasserts and realleges each allegation above as if fully set forth herein.

52. The previously mentioned acts of Defendants constitute unfair competition and an infringement of Plaintiff's rights in violation of New York General Business Law §§ 360-k and 360-l in its above-described trademark.

53. Plaintiff has used the above-described trademark continuously for more than a century, to identify its services and to distinguish them from the services of others, by, among other things, prominently displaying the trademark on store fronts, letterheads, bills,

direct mail advertising, radio and television advertising, telephone directory advertising, in periodicals distributed throughout the United States, and on its website.

54. Plaintiff's services and advertising have been distributed in the trade area where Defendants are engaged in business. As a result of the sales and advertising by Plaintiff under its trademark, the mark has developed and now has a secondary and distinctive trademark meaning to purchasers in Defendants' trade area. The mark has come to indicate to such customers a service originating only with Plaintiff. As a result of the association by purchasers of the mark with Plaintiff, Defendants' use of the mark is likely to cause confusion to such purchasers.

55. Defendants have infringed Plaintiff's mark as alleged with the intent to deceive the public into believing that Defendants' services are approved by, sponsored by or affiliated with, Plaintiff.

56. By reason of Defendants' acts, Plaintiff has suffered, and will continue to suffer, damage to its business, reputation, and good will.

## COUNT III
## CIVIL RICO

57. Plaintiff reasserts and realleges each allegation above as if fully set forth herein.

58. Defendants engaged, since June 12, 2007, in a continuing series of schemes to defraud its clients, by depriving them of their loan application fees through an array of improper devices.

59.  Defendants executed this scheme and artifice to defraud by causing matters to be mailed and delivered by the U.S. Postal Service, by using email, fake websites on the internet, interstate telephone calls, and wire transfers in interstate commerce.

60.  Defendants committed, among many others, the following acts of mail fraud, indictable under 18 U.S.C. § 1341, and wire fraud, indictable under 18 U.S.C. § 1343, each of which constituted "racketeering activity" within the meaning of 18 U.S.C. § 1961(1), and all of which collectively constituted part of a "pattern of racketeering activity" within the meaning of 18 U.S.C. § 1961(5):

    a.  Defendants advanced a fraudulent scheme, whereby they offered individuals access to loans that purported to allow a borrower to obtain virtually any amount of money through a 4 percent interest rate loan with a thirty-year term for both residential and commercial properties.

    b.  Empire Logging is not a private lending company and does not have access to "humanitarian loans." Upon information and belief, during their sales pitch, Defendants told customers that they were affiliated with retired U.S. Air Force Colonel, William E. Beckner, and an entity called the "World Alliance of Mayors and Local Officials," which claims on its website to be a "non-profit and non-partisan business entity" that works "in harmony with the UN and the World Bank."

    c.  Neither Mr. Beckner nor the "World Alliance of Mayors" are authorized lenders. Upon information and belief, the "World Alliance of Mayors" is merely a shell with a website designed to advance Defendants' fraudulent scheme.

   d. Following a meeting or telephone inquiry, Defendants send a "loan application" to potential borrowers by email or U.S. Mail, with instructions to fax the application back to numbers in either Scottsdale, Arizona or Albany, New York.

   e. Borrowers are told that they will have to "provide a deposit equal to 1 % of your loan amount," that it "must be in the form of a cashier's check payable to Ticor Title Company," and that Ticor will "deposit the funds into your escrow account [and] then forward those funds to Empire Logging." Borrowers are told that upon closing of the loan, "your deposit will be applied to your prepaid interest."

   f. Since mid-December 2007, more than 150 Empire Logging clients have opened escrow accounts with Ticor Title.

   g. Defendants have not applied the borrowers' deposits to a "prepaid interest reserve," but have instead forwarded the funds held in escrow to a private account with the Bank of China, New York, located at 410 Madison Avenue, New York, New York.

   h. None of the remaining loans applied for will ever be funded as the entire transaction is designed to fraudulently obtain application fees from potential borrowers.

  61. Ticor Title provided services related to the more than 150 escrow accounts opened by Empire Logging clients in reliance on Defendant Baschmann's representations that Defendants would process and fund the loans to their clients, and that Ticor Title would receive fees for its services when the loans were processed and funded. Baschmann made these

representations to Ticor Title representatives in Washington State in late November 2007, and on numerous subsequent occasions to Ticor Title representatives via telephone.

62. Ticor Title's reliance on Defendants' misrepresentations was reasonable.

63. Defendants fraudulently claim to potential borrowers, by email or U.S. Mail, that they are "affiliated" with Plaintiff. Defendants are not "affiliated" with Plaintiff, and Plaintiff is not responsible for forwarding loan documentation to the purported borrowers.

64. Defendant Empire Logging conspired with Defendant Baschmann to violate the provisions of 18 U.S.C. § 1962(a), and that conspiracy by Defendants violated 18 U.S.C. § 1962(d).

65. Defendants meet the meaning of the term "enterprise" in 18 U.S.C. § 1961(4).

66. Defendants meet the meaning of the term "person" in 18 U.S.C. § 1961(3).

67. Defendants received income directly from the pattern of racketeering activity and used the income or its proceeds to operate itself in violation of 18 U.S.C. § 1962(a).

68. The enterprise and the pattern of racketeering activity directly affected interstate commerce.

69. By reason of Defendants' acts, Plaintiff has suffered, and will continue to suffer, a direct injury that was foreseeable to its business, reputation, and good will.

## COUNT IV
## COMMON LAW FRAUD

70. Plaintiff reasserts and realleges each allegation above as if fully set forth herein.

71. Defendants' acts constitute common law fraud under the law of the State of New York.

72. Ticor Title has provided services related to the more than 150 escrow accounts opened by Empire Logging clients since mid-December 2007 in reliance on Defendant Baschmann's representations that Defendants would process and fund the loans to their clients, and that Ticor Title would receive fees for its serves when the loans were processed and funded. Baschmann made these representations to Ticor Title representatives in Washington State in late November 2007, and on numerous subsequent occasions to Ticor Title representatives via telephone.

73. The representations mentioned above were false when the Defendants made them, and the Defendants knew that their representations were false, in that:

    a. Defendants advanced a fraudulent scheme, whereby they offered individuals access to loans that purported to allow a borrower to obtain virtually any amount of money through a 4 percent interest rate loan with a thirty-year term for both residential and commercial properties.

    b. Empire Logging is not a private lending company and does not have access to "humanitarian loans." Upon information and belief, during their sales pitch, Defendants told customers that they were affiliated with retired U.S. Air Force Colonel, William E. Beckner, and an entity called the "World Alliance of Mayors and Local Officials," which claims on its website to be a "non-profit and non-partisan business entity" that works "in harmony with the UN and the World Bank."

c.  Neither Mr. Beckner nor the "World Alliance of Mayors" are authorized lenders. Upon information and belief, the "World Alliance of Mayors" is merely a shell with a website designed to advance Defendants' fraudulent scheme.

d.  Following a meeting or telephone inquiry, Defendants send a "loan application" to potential borrowers by email or U.S. Mail, with instructions to fax the application back to numbers in either Scottsdale, Arizona or Albany, New York.

e.  Borrowers are told that they will have to "provide a deposit equal to 1 % of your loan amount," that it "must be in the form of a cashier's check payable to Ticor Title Company," and that Ticor will "deposit the funds into your escrow account [and] then forward those funds to Empire Logging." Borrowers are told that upon closing of the loan, "your deposit will be applied to your prepaid interest."

f.  Since mid-December 2007, more than 150 Empire Logging clients have opened escrow accounts with Ticor Title.

g.  Defendants have not applied their clients' deposits into the escrow accounts opened with Ticor Title to a "prepaid interest reserve," but have instead forwarded the funds held in escrow to a private account with the Bank of China, New York, located at 410 Madison Avenue, New York, New York.

h.  None of the remaining loans applied for will ever be funded as the entire transaction is designed to fraudulently obtain application fees from potential borrowers.

74.     Defendants made the representations mentioned above with the intent and for the purpose of deceiving Plaintiff and to induce Plaintiff into relying on the representations.

75.     Plaintiff's reliance on the Defendants' misrepresentations that it would process and fund the loans to their clients was reasonable.

76.     By reason of Defendants' acts, Plaintiff has suffered, and will continue to suffer, a direct injury that was foreseeable to its business, reputation, and good will.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff requests that:

77.     This Court grant an injunction enjoining Defendants from transferring funds from the Bank of China, New York, located at 410 Madison Avenue, New York, New York.

78.     This Court grant an injunction pursuant to the powers granted it under 15 U.S.C. § 1116, enjoining Defendants and their agents, servants, and employees from directly or indirectly using the name "Ticor Title Insurance Company" or any mark, word, or name similar to Plaintiff's mark which is likely to cause confusion or mistake or to deceive.

79.     This Court, pursuant to the power granted it under 15 U.S.C. § 1118, order that all labels, signs, prints, packages, receptacles, and advertisements in the possession of Defendants bearing the mark "Ticor Title Insurance Company" and all plates, molds, and other means of making the same shall be delivered and destroyed.

80.     Holding Defendants liable to Plaintiff for damages in an amount to be determined at trial.

81. Holding the Defendants liable to pay punitive damages.

82. Holding Defendants liable for Plaintiff's costs and disbursements of this action including reasonable attorneys' fees; and

83. Granting such other and further relief as the court may deem just and equitable.

Dated: March 3, 2008

DEWEY & LEBOEUF LLP

By: _____
Christopher J. Clark
Paul H. Cohen
Kevin C. Wallace
1301 Avenue of the Americas
New York, New York 10019
(212) 259-8000

*Attorneys for Plaintiff
Ticor Title Insurance Co.*